**F I L E D**
CLERK, U.S. DISTRICT COURT

01/17/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DVE _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

March 2023 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>CASEY MAHONEY and<br>JOSEPH PARKINSON,<br><br>          Defendants. | SA CR No. 21-183(A)-JLS<br><br>F I R S T<br>S U P E R S E D I N G<br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy;<br>18 U.S.C. §§ 220(a)(1), (2):<br>Illegal Remunerations for<br>Referrals to Clinical Treatment<br>Facilities; 18 U.S.C.<br>§ 1956(a)(1)(B)(i): Concealment<br>Money Laundering; 31 U.S.C.<br>§§ 5324(a)(3), (d)(2):<br>Structuring; 21 U.S.C.<br>§§ 841(a)(1), (b)(1)(C):<br>Possession with Intent to<br>Distribute Fentanyl; 26 U.S.C.<br>§ 7206(2): Aiding and Assisting<br>the Preparation and Presentation<br>of a Fraudulent Document; 18<br>U.S.C. § 2: Aiding and Abetting<br>and Causing an Act to be Done; 18<br>U.S.C. § 982, 31 U.S.C. § 5317:<br>Criminal Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

[ALL DEFENDANTS]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this First Superseding Indictment:

1.   Defendant CASEY MAHONEY controlled two clinical treatment facilities in Orange County, California, namely, Healing Path Detox LLC ("Healing Path") and Get Real Recovery, Inc. ("Get Real"). Healing Path and Get Real were "clinical treatment facilities," as defined in Title 18, United States Code, Section 220(e)(2), and were regulated under state and federal law.  Defendant MAHONEY also controlled a Wells Fargo Bank Account held under the name Healing Path Detox LLC ("the Healing Path Account"), and a Wells Fargo Bank Account held under the name Get Real Recovery, Inc. ("the Get Real Account").

2.   Defendant JOSEPH PARKINSON and co-conspirators "Broker 1," "Broker 2," and Darius Moore (collectively, the "other Brokers") were "body brokers" who referred patients to clinical treatment facilities in Orange County, California, including Healing Path and Get Real, in exchange for kickback payments.

3.   Defendant PARKINSON controlled the business entities Star Treatment LLC and Star Treatment Solutions LLC.  Defendant PARKINSON also controlled a First Bank account held under the name Star Treatment LLC ("Parkinson Account 1"), and a J.P. Morgan Chase Bank account held under the name Star Treatment Solutions LLC ("Parkinson Account 2").

4.    Broker 1 controlled two business entities ("Business A" and "Business B"), and Broker 2 controlled another business entity ("Business C").  Moore controlled the business entity Moore Recovery Solutions LLC.

5.    Defendant MAHONEY hired and oversaw employees at Healing Path and Get Real, whose duties included coordinating the admission of patients referred by defendant PARKINSON and the other Brokers and reviewing kickback amounts owed to them by defendant MAHONEY for patients referred to Healing Path and Get Real over the preceding month.

6.    Healing Path and Get Real each serviced patient populations that received health care benefits through, among other entities, Anthem Blue Cross Blue Shield, Aetna Life Insurance Company, Cigna Health and Life Insurance Company, Cigna Behavioral Health Inc., and United Health Group (collectively, the "insurance companies").  The insurance companies were "health care benefit programs," as defined in Title 18, United States Code, Section 24(b), and Title 18, United States Code, Section 220(e)(3).

B.    OBJECTS OF THE CONSPIRACY

7.    Beginning on a date unknown, but no later than on or about October 24, 2018, and continuing to at least on or about December 15, 2020, in Orange County, California, within the Central District of California, and elsewhere, defendants MAHONEY and PARKINSON knowingly conspired with Broker 1, Broker 2, Moore, and others known and unknown to the Grand Jury, to commit offenses against the United States, namely:

1          a.    Soliciting and Receiving Illegal Remunerations for

2    Referrals to Clinical Treatment Facilities, in violation of Title 18,

3    United States Code, Section 220(a)(1); and

4          b.    Paying and Offering Illegal Remunerations for

5    Referrals to Clinical Treatment Facilities, in violation of Title 18,

6    United States Code, Section 220(a)(2).

7    C.    <u>MANNER AND MEANS OF THE CONSPIRACY</u>

8          8.    The objects of the conspiracy were to be accomplished, in

9    substance, as follows:

10          a.    Defendant MAHONEY would pay tens of thousands of

11    dollars per month in kickbacks to defendant PARKINSON and the other

12    Brokers via accounts that they controlled in the names of the

13    business entities that they controlled, both as compensation in

14    exchange for referring patients or patronage to Healing Path and Get

15    Real, and to induce them to continue to refer patients to those

16    facilities.

17          b.    Defendant PARKINSON and the other Brokers would pay a

18    portion of those funds to patients, often in the form of cash, as

19    kickbacks in exchange for staying at Healing Path and Get Real, in

20    amounts that were also determined based on the respective patients'

21    type of insurance, type of treatment, and length of stay.  Defendant

22    MAHONEY knew that defendant PARKINSON and the other Brokers paid such

23    kickbacks to patients in exchange for staying at Healing Path and Get

24    Real, and would encourage them to find ways to withdraw cash from

25    their bank accounts without attracting law enforcement attention.

26          c.    Defendant PARKINSON used Parkinson Accounts 1 and 2 to

27    receive kickbacks for patient referrals to clinical treatment

28    facilities including Healing Path and Get Real, and to withdraw cash

used to pay kickbacks to recruited patients in exchange for receiving treatment at such facilities.  Defendant PARKINSON would conceal the nature, ownership, and control of the cash kickbacks paid to patients by withdrawing funds and causing others to withdraw funds from Parkinson Accounts 1 and 2 in transactions structured at or under $10,000.

d.    Defendant MAHONEY, on behalf of Healing Path and Get Real, would enter into sham contracts with businesses controlled by defendant PARKINSON and the other Brokers that: (1) purportedly required fixed payments to the respective body broker; (2) purportedly prohibited payments from Healing Path or Get Real based on the "volume or value" of the body broker's patient referrals; and (3) were designed to conceal the nature of the kickback payments.

e.    Defendant MAHONEY and employees at Healing Path and Get Real would meet with the other Brokers, or would communicate with them via an encrypted messaging application, to calculate the respective kickback amounts owed to the other Brokers by defendant MAHONEY for each patient referred to Healing Path and Get Real, based on the patient's type of insurance, the type of treatment the patient purportedly received, and the length of the patient's stay at Healing Path and Get Real.  They would then determine whether the contractual monthly payment to Moore and Broker 1 the prior month overstated or understated the kickback amount that defendant MAHONEY actually owed to each of them.

f.    When defendant MAHONEY accrued a large amount of kickback debt owed to defendant PARKINSON and the other Brokers, defendant MAHONEY would pay those debts (1) by writing checks to them for tens of thousands of dollars beyond what defendant MAHONEY owed

under the contracts, and (2) by entering into new, often simultaneous sham contracts with other businesses that the brokers controlled, thus obligating defendant MAHONEY to pay them tens of thousands of dollars in additional funds per month and allowing defendant MAHONEY to further conceal the kickback payments by spreading them across checks to as many as four different businesses or persons in a given month.

g.   To induce Broker 1 to refer patients to Healing Path and Get Real, defendant MAHONEY would pay thousands of dollars per month in additional kickback funds to Broker 1.  Defendant MAHONEY would conceal the nature, ownership, and control of these additional kickback payments by paying them to Broker 1 via checks payable to Broker 1's mother, and by falsely writing "Consultant Fee" on the memo line of each check, when in fact Broker 1's mother did not provide any consulting services for defendant MAHONEY or otherwise work for defendant MAHONEY in any way.

h.   Healing Path and Get Real would bill and subsequently be reimbursed by the insurance companies for treatment purportedly given to patients referred to the respective facility by defendant PARKINSON and the other Brokers.

i.   In total during the conspiracy, defendant MAHONEY would pay at least $2,698,725 in kickbacks to defendant PARKINSON and the other Brokers.

D.   OVERT ACTS

9.   In furtherance of the conspiracy and to accomplish the objects of the conspiracy, on or about the following dates, defendant MAHONEY, defendant PARKINSON, Broker 1, Broker 2, Moore, and others known and unknown to the Grand Jury, committed and willfully caused

others to commit the following overt acts, among others, in Orange
County, California, within the Central District of California, and
elsewhere:

### Encrypted Communications with Broker 1

Overt Act No. 1:   On April 2, 2020, defendant MAHONEY caused
a spreadsheet to be sent to Broker 1 documenting patients who had
been referred to Healing Path and Get Real the prior month and the
resulting kickbacks that defendant MAHONEY owed to defendant
PARKINSON, Broker 1, and Broker 2.

Overt Act No. 2:   On April 29, 2020, defendant MAHONEY caused
spreadsheets to be sent to Broker 1 documenting patients who had been
referred to Healing Path and Get Real for the respective prior month
and the resulting kickbacks that defendant MAHONEY owed to defendant
PARKINSON, Broker 1, and Broker 2.

Overt Act No. 3:   On June 1, 2020, defendant MAHONEY caused
spreadsheets to be sent to Broker 1 documenting patients who had been
referred to Healing Path and Get Real for the respective prior month
and the resulting kickbacks that defendant MAHONEY owed to defendant
PARKINSON, Broker 1, and Broker 2.

Overt Act No. 4:   On August 8, 2020, defendant MAHONEY caused
spreadsheets to be sent to Broker 1 documenting patients who had been
referred to Healing Path and Get Real for the respective prior month
and the resulting kickbacks that defendant MAHONEY owed to defendant
PARKINSON, Broker 1, and Broker 2.

### June 2020 Recording

Overt Act No. 5:   On June 8, 2020, after defendant MAHONEY
received a recorded conversation between Moore and a patient at
Healing Path, during which Moore arranged to pay the patient between

7

$500 and $750 per week for staying at Healing Path, depending on the type of treatment that the patient received, and Moore agreed to give the patient money to buy drugs before starting at Healing Path, defendant MAHONEY told Moore not to worry about the recording and asked Moore to be more careful.

**Meeting at Healing Path with Defendant MAHONEY, Broker 1, Moore, and Other Employees**

Overt Act No. 6:    On October 1, 2020, defendant MAHONEY, Broker 1, and another individual who by then had become a cooperator working with law enforcement, met at Healing Path to review the amounts of kickbacks owed to Brokers 1 and 2, based on the patients whom they and defendant PARKINSON had referred to Healing Path and Get Real the prior month.

Overt Act No. 7:    On October 1, 2020, defendant MAHONEY directed Broker 1 to terminate his broker relationship with defendant PARKINSON, specifically, defendant MAHONEY criticized Broker 1 for operating his body brokering business with defendant PARKINSON and, when Broker 1 responded that he needed defendant PARKINSON to ensure that Broker 1 had enough cash to pay kickbacks to patients, defendant MAHONEY responded, "That's something you can work on figuring out."

Overt Act No. 8:    On October 1, 2020, defendant MAHONEY directed Broker 1 to exercise more caution in operating the kickback scheme, namely, by defendant MAHONEY stating that Broker 1's body brokering organization was causing law enforcement to investigate their kickback conspiracy:  "They're kicking in doors.  Feds.  Darius [Moore] doesn't have any problems like that.  He placed 16 people last month plus everyone he placed in Get Real.  So he's at the point

now that he places like 30 people in a month [at Healing Path and Get Real]."

Overt Act No. 9:   On October 1, 2020, defendant MAHONEY stated that, because of his concerns over law enforcement activity, defendant MAHONEY deleted his spreadsheet tracking kickbacks owed to body brokers referring patients to Healing Path and Get Real.

Overt Act No. 10:   On October 1, 2020, defendant MAHONEY paid a $60,000 kickback to Broker 1, via a check payable to Business A.

Overt Act No. 11:   On October 1, 2020, defendant MAHONEY paid a $25,000 kickback to Broker 2, via a check payable to Business C.

Overt Act No. 12:   On October 1, 2020, defendant MAHONEY paid Moore a $25,000 kickback payment on behalf of Get Real and a $20,000 kickback payment on behalf of Healing Path.

**Additional Kickbacks Paid by Defendant MAHONEY**

Overt Act No. 13:   On November 7, 2019, defendant MAHONEY paid defendant PARKINSON a $22,500 kickback.

Overt Act No. 14:   On November 12, 2019, defendant MAHONEY paid defendant PARKINSON a $22,500 kickback.

Overt Act No. 15:   On November 15, 2019, defendant MAHONEY paid defendant PARKINSON a $32,500 kickback.

Overt Act No. 16:   On November 27, 2019, defendant MAHONEY paid defendant PARKINSON a $22,500 kickback.

Overt Act No. 17:   On November 29, 2019, defendant MAHONEY paid defendant PARKINSON a $32,500 kickback.

Overt Act No. 18:   On October 8, 2020, defendant MAHONEY paid Moore $50,000 on behalf of Healing Path.

COUNTS TWO THROUGH EIGHT

[18 U.S.C. § 220(a)(2); 18 U.S.C. § 2]

[DEFENDANT MAHONEY]

10.  The Grand Jury realleges paragraphs 1 through 6 and 8 of this First Superseding Indictment here.

11.  On or about the dates set forth below, in Orange County, California, within the Central District of California, and elsewhere, defendant CASEY MAHONEY, together with others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and willfully paid remuneration, including a kickback, bribe, and rebate, namely, the following payments, directly and indirectly, overtly and covertly, in cash and in kind, (1) to induce a referral of an individual to a recovery home and clinical treatment facility, and (2) in exchange for an individual using the services of a recovery home and clinical treatment facility, each with respect to services covered by a health care benefit program, in and affecting interstate commerce:

| COUNT | DATE | PAYMENT | APPROXIMATE AMOUNT |
|---|---|---|---|
| TWO | 11/27/2019 | Check from Get Real payable to Star Treatment Solutions LLC | $22,500 |
| THREE | 11/29/2019 | Check from Healing Path payable to Star Treatment Solutions LLC | $32,500 |
| FOUR | 10/1/2020 | Check from Healing Path payable to Business A | $60,000 |
| FIVE | 10/1/2020 | Check from Healing Path payable to Business C | $25,000 |
| SIX | 10/1/2020 | Check from Healing Path payable to Moore Recovery Solutions LLC | $20,000 |

| COUNT | DATE | PAYMENT | APPROXIMATE AMOUNT |
|-------|------|---------|---------------------|
| SEVEN | 10/8/2020 | Check from Healing Path payable to Moore Recovery Solutions LLC | $50,000 |
| EIGHT | 10/15/2020 | Check from Get Real payable to Moore Recovery Solutions LLC | $45,000 |

COUNTS NINE AND TEN

[18 U.S.C. § 220(a)(1); 18 U.S.C. § 2]

[DEFENDANT PARKINSON]

12. The Grand Jury realleges paragraphs 1 through 6 and 8 of this First Superseding Indictment here.

13. On or about the dates set forth below, in Orange County, California, within the Central District of California, and elsewhere, defendant JOSEPH PARKINSON, together with others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and willfully solicited and received remuneration, including a kickback, bribe, and rebate, namely, the following payments, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring a patient and patronage to a recovery home and clinical treatment facility, each with respect to services covered by a health care benefit program, in and affecting interstate commerce:

| COUNT | DATE | PAYMENT | APPROXIMATE AMOUNT |
|-------|------|---------|--------------------|
| NINE | 11/27/2019 | Check from Get Real payable to Star Treatment Solutions LLC | $22,500 |
| TEN | 11/29/2019 | Check from Healing Path payable to Star Treatment Solutions LLC | $32,500 |

COUNTS ELEVEN THROUGH THIRTEEN

[18 U.S.C. § 1956(a)(1)(B)(i); 18 U.S.C. § 2]

[DEFENDANT MAHONEY]

14.   The Grand Jury re-alleges paragraphs 1 through 6 and 8 of this First Superseding Indictment here.

15.   On or about the following dates, in Orange County, California, within the Central District of California, and elsewhere, defendant CASEY MAHONEY and others known and unknown to the Grand Jury, conducted, aided and abetted the conducting of, and willfully caused others to conduct, the following financial transactions affecting interstate and foreign commerce, knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity, and which transactions, in fact, involved the proceeds of specified unlawful activity, that is, Conspiracy to Pay, Offer, Solicit, and Receive Illegal Remunerations for Referrals to Clinical Treatment Facilities, in violation of Title 18, United States Code, Sections 371, 220(a)(1), and 220(a)(2), knowing that the transactions were designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity:

| COUNT | DATE | TRANSACTION |
|-------|------|-------------|
| ELEVEN | 8/3/2020 | Payment of check from Get Real to Broker 1's mother for $39,500, falsely labeled with the memo line "Consulting Fee" |
| TWELVE | 9/1/2020 | Payment of check from Get Real to Broker 1's mother for $21,500, falsely labeled with the memo line "Consulting Fee" |
| THIRTEEN | 10/1/2020 | Payment of check from Get Real to Broker 1's mother for $23,000, falsely labeled with the memo line "Consulting Fee" |

COUNTS FOURTEEN THROUGH TWENTY-FIVE

[31 U.S.C. §§ 5324(a)(3), (d)(2); 18 U.S.C. § 2]

[DEFENDANT PARKINSON]

16.  The Grand Jury re-alleges paragraphs 1 through 6 and 8 of this First Superseding Indictment here.

17.  On or about the following dates, in Orange County, within the Central District of California, and elsewhere, defendant JOSEPH PARKINSON and others known and unknown to the Grand Jury, aiding and abetting each other, knowingly, and for the purpose of evading the reporting requirements of Section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, structured, assisted in structuring, and willfully caused to be structured, the following transactions with domestic financial institutions, as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, and while violating another law of the United States:

| COUNT | DATE | TRANSACTIONS |
|---|---|---|
| FOURTEEN | 6/8/2020 | Cash withdrawals of $6,000 from Parkinson Account 1 and $9,000 from Parkinson Account 2 |
| FIFTEEN | 6/16/2020 | Cash withdrawals of $6,000 from Parkinson Account 1 and $9,000 from Parkinson Account 2 |
| SIXTEEN | 6/18/2020 | Cash withdrawals of $6,000 from Parkinson Account 1 and $10,000 from Parkinson Account 2 |
| SEVENTEEN | 7/2/2020 | Cash withdrawals of $6,000 from Parkinson Account 1 and $10,000 from Parkinson Account 2 |
| EIGHTEEN | 7/6/2020 | Cash withdrawals of $6,000 from Parkinson Account 1 and $9,500 from Parkinson Account 2 |
| NINETEEN | 7/20/2020 | Cash withdrawals of $6,000 from Parkinson Account 1 and $9,500 from Parkinson Account 2 |

| COUNT | DATE | TRANSACTIONS |
|-------|------|--------------|
| TWENTY | 7/22/2020 | Cash withdrawals of $5,500 from Parkinson Account 1 and $9,500 from Parkinson Account 2 |
| TWENTY-ONE | 7/29/2020 | Cash withdrawals of $8,000 from Parkinson Account 1 and $10,000 from Parkinson Account 2 |
| TWENTY-TWO | 8/3/2020 | Cash withdrawals of $6,000 from Parkinson Account 1 and $9,000 from Parkinson Account 2 |
| TWENTY-THREE | 8/12/2020 | Cash withdrawals of $5,000 from Parkinson Account 1 and $9,000 from Parkinson Account 2 |
| TWENTY-FOUR | 8/24/2020 | Cash withdrawals of $8,000 from Parkinson Account 1 and $9,000 from Parkinson Account 2 |
| TWENTY-FIVE | 9/8/2020 | Cash withdrawals of $8,000 from Parkinson Account 1 and $8,500 from Parkinson Account 2 |

COUNT TWENTY-SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

[DEFENDANT PARKINSON]

On or about September 24, 2020, in Orange County, within the Central District of California, defendant JOSEPH PARKINSON knowingly and intentionally possessed with intent to distribute N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT TWENTY-SEVEN

[26 U.S.C. § 7206(2)]

[DEFENDANT MAHONEY]

Beginning on a date unknown, and continuing to at least on or about July 23, 2021, in Orange County, within the Central District of California, and elsewhere, defendant CASEY MAHONEY willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation to the Internal Revenue Service of a Form 1099-NEC, which defendant MAHONEY knew was false and fraudulent as to a material matter, in that the Form 1099-NEC reported that Get Real Recovery, Inc. ("Get Real") paid $184,225 in non-employee compensation to Broker 1's mother in tax year 2020, when, in fact, as defendant MAHONEY then knew and believed, (1) the reported payments were not compensation for any services rendered by Broker 1's mother, and Broker 1's mother did provide any services for Get Real in 2020 or otherwise; (2) the payments were, rather, compensation paid by defendant MAHONEY in exchange for Broker 1's services in referring drug-addicted patients to Get Real and to induce Broker 1 to continue to refer drug-addicted patients to Get Real; and (3) the Form 1099-NEC was part of defendant MAHONEY's effort to conceal the true nature, ownership, and control of such payments to Broker 1.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count One of this First Superseding Indictment.

2. Any defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), a defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of any defendant's conviction of any of the offenses set forth in any of Counts Eleven through Thirteen of this First Superseding Indictment.

2.   Any defendant, if so convicted, shall forfeit to the United States of America the following:

(a)  Any property, real or personal, involved in such offense, and any property traceable to such property; and

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), a defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the

course of the money laundering offense unless the defendant, in
committing the offense or offenses giving rise to the forfeiture,
conducted three or more separate transactions involving a total of
$100,000 or more in any twelve-month period.

1                          FORFEITURE ALLEGATION THREE

2                              [31 U.S.C. § 5317]

3          1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4     Procedure, notice is hereby given that the United States of America

5     will seek forfeiture as part of any sentence, pursuant to Title 31,

6     United States Code, Section 5317, in the event of any defendant's

7     conviction of the offenses set forth in any of Counts Fourteen

8     through Twenty-Five of this First Superseding Indictment.

9          2.   Any defendant so convicted shall forfeit to the United

10    States of America the following:

11              (a)  All property, real or personal, involved in the

12    offense and any property traceable thereto; and

13              (b)  To the extent that such property is not available for

14    forfeiture, a sum of money equal to the total value of the property

15    described in subparagraph (a).

16         3.   Pursuant to Title 21, United States Code, Section 853(p), as

17    incorporated by Title 31, United States Code, Section 5317(c)(1)(B),

18    a defendant so convicted shall forfeit substitute property, if, by

19    any act or omission of said defendant, the property described in the

20    preceding, or any portion thereof; (a) cannot be located upon the

21    exercise of due diligence; (b) has been transferred, sold to, or

22    deposited with a third party; (c) has been placed beyond the

23    //

24    //

25    //

26

27

28

                                       21

1    jurisdiction of the court; (d) has been substantially diminished in

2    value; or (e) has been commingled with other property that cannot be

3    divided without difficulty.

4

5                                               A TRUE BILL

6

7                                    **/s/**
                                     _____
8                                    Foreperson

9

10   E. MARTIN ESTRADA
     United States Attorney
11

12

13   MACK E. JENKINS
     Assistant United States Attorney
14   Chief, Criminal Division

15   BENJAMIN R. BARRON
     Assistant United States Attorney
16   Chief, Santa Ana Branch Office

17   GLENN LEON
     Chief, Fraud Section
18   U.S. Department of Justice

19   SIOBHAN M. NAMAZI
     Trial Attorney, Fraud Section
20   U.S. Department of Justice

21

22

23

24

25

26

27

28