E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
NANDOR F.R. KISS (Cal. Bar No. 299954)
Assistant United States Attorney
Santa Ana Branch Office
    8000 United States Courthouse
    411 West 4th Street
    Santa Ana, California 92701
    Telephone: (714) 338-3539
    Facsimile: (714) 338-3708
    E-mail:   nandor.kiss@usdoj.gov

SIOBHAN M. NAMAZI (N.Y. Bar No. 5487293)
Trial Attorney
United States Department of Justice
Fraud Section, Criminal Division
    300 North Los Angeles Street, Suite 2001
    Los Angeles, California 90012
    Telephone: (202) 839-2589
    E-mail:   siobhan.namazi@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 8:21-CR-00183(A)-JLS |
|     Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
|         v. | |
| CASEY MAHONEY, | |
|     Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, Assistant United States Attorney Nandor F.R. Kiss, and U.S. Department of Justice Trial Attorney Siobhan M. Namazi, hereby files its Trial Memorandum.

1    The government respectfully requests leave to file additional

2 memoranda as may become appropriate during the course of trial.

3 Dated: August 23, 2024              Respectfully submitted,

4                                     E. MARTIN ESTRADA
                                      United States Attorney
5
                                      MACK E. JENKINS
6                                     Assistant United States Attorney
                                      Chief, Criminal Division
7

8                                     _____/s/_____
                                      NANDOR F.R. KISS
9                                     Assistant United States Attorney
                                      SIOBHAN M. NAMAZI
10                                    Trial Attorney, U.S. Department of
                                      Justice
11
                                      Attorneys for Plaintiff
12                                    UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.    FACTUAL SUMMARY OF THE GOVERNMENT'S CASE........................1

II.   THE INDICTMENT AND ELEMENTS....................................2

      A.    Conspiracy to Violate EKRA..............................2

      B.    Offering or Paying Illegal Remunerations................3

      C.    Concealment Money Laundering............................4

      D.    Aiding and Assisting the Preparation of a False Tax
            Document................................................4

III.  TRIAL..........................................................5

      A.    Length of Trial.........................................5

      B.    Witnesses...............................................5

IV.   LEGAL AND EVIDENTIARY ISSUES...................................6

      A.    Admissibility of Audio Recording........................6

      B.    Admissibility of Undercover Video Recording.............7

      C.    Admissibility of Emails from Brent Littel...............8

      D.    Summary Charts..........................................9

      E.    Proper Use of Interview Reports or Rough Notes at
            Trial..................................................11

      F.    Evidence of Any Legitimate Substance Abuse Treatment
            Services Provided or other Good Conduct as a Defense
            to the Charges in the Superseding Indictment...........13

      G.    Jury Nullification.....................................16

**TABLE OF AUTHORITIES**

**CASES**

Davis & Cox v. Summa Corp., 751 F.2d 1507 (9th Cir. 1985)...........9

Goldberg v. United States, 425 U.S. 94 (1976).......................11

Herzog v. United States, 226 F.2d 561 (9th Cir. 1955).............13

Huitron v. Finn, 2003 WL 22159060 (N.D. Cal. Sept. 15, 2003).......16

Merced v. McGrath, 426 F.3d 1076 (9th Cir. 2005)...................16

Palermo v. United States, 360 U.S. 343 (1959).....................11

Ross v. Oklahoma, 487 U.S. 81 (1988)................................11

United States v. Anekwu, 695 F.3d 967 (9th Cir. 2012).............10

United States v. Barragan, 871 F.3d 689 (9th Cir. 2017).............8

United States v. Booker, 543 U.S. 222 (2005)......................12

United States v. Brika, 416 F.3d 514 (6th Cir. 2005)..............12

United States v. Claiborne, 765 F.2d 784 (9th Cir. 1985)..........11

United States v. Diaz, 961 F.2d 1417 (9th Cir. 1992)..............15

United States v. Dimora, 750 F.3d 619 (6th Cir. 2014).............13

United States v. Ellisor, 522 F.3d 1255 (11th Cir. 2008)..........13

United States v. Gardner, 611 F.2d 770 (9th Cir. 1980)............10

United States v. Harris, No. CR 17-00001 HG-01, 2018 WL 1990520
    (D. Haw. Apr. 25, 2018)......................................12

United States v. Hill, 526 F.2d 1019 (10th Cir. 1975).............12

United States v. King, 587 F.2d 956 (9th Cir. 1978)................7

United States v. Kot, No. 2:10-CR-00280-KJD, 2012 WL 1657118 (D.
    Nev. May 10, 2012), aff'd, 583 F. App'x 716 (9th Cir. 2014)...12

United States v. Lara, 2018 WL 1225204 (E.D. Calif. 2018)..........13

United States v. Leonardi, 623 F.2d 746 (2d Cir. 1980)............12

United States v. Lynch, 903 F.3d 1061 (9th Cir. 2018).............16

United States v. Marks, 816 F.2d 1207 (7th Cir. 1987).............12

United States v. Marrero, 904 F.2d 215 (5th Cir. 1990)............13

United States v. Moreira, 605 Fed. App'x 852 (11th Cir. 2015)......15

United States v. Ortiz, 776 F.3d 104 (9th Cir. 2015)................6

United States v. Payne, 944 F.2d 1458 (9th Cir. 1991)..............8

United States v. Poschwatta, 829 F.2d 1477 (9th Cir. 1987)........10

United States v. Powell, 955 F.2d 1206 (9th Cir. 1991)............16

United States v. Rizk, 660 F.3d 1125 (9th Cir. 2011)...............9

United States v. Scales, 594 F.2d 558 (6th Cir. 1979)..............9

United States v. Scarpa, 897 F.2d 63 (2d Cir. 1990)...............14

United States v. Shirley, 884 F.2d 1130 (9th Cir. 1989)...........10

United States v. Simpson, 460 F.2d 515 (9th Cir. 1972)............16

United States v. Smith, 591 F.3d 974 (8th Cir. 2010)...............7

United States v. Thomas, 116 F.3d 606 (2d Cir. 1997)..............16

United States v. Thomas, 116 F.3d 606 (2d Cir. 1997)..............16

United States v. Tones, 759 F. App'x 579 (9th Cir. 2018)..........11

United States v. Valerio, 441 F.3d 837 (9th Cir. 2006).............8

United States v. Winograd, 656 F.2d 279 (7th Cir. 1981)...........14

United States v. Workinger, 90 F.3d 1409 (9th Cir. 1996)...........7

Vatyan v. Mukasey, 508 F.3d 1179 (9th Cir. 2007)...................6

**STATUTES**

18 U.S.C. § 1956................................................2, 4

18 U.S.C. § 2...............................................2, 3, 4

18 U.S.C. § 220.................................................2, 3

18 U.S.C. § 3500.................................................13

18 U.S.C. § 371...................................................2

26 U.S.C. § 7206...............................................2, 4

**RULES**

Fed. R. Evid. 1006................................................9

Fed. R. Evid. 401................................................17

Fed. R. Evid. 403................................................17

Fed. R. Evid. 404................................................15

Fed. R. Evid. 611................................................10

Fed. R. Evid. 801.................................................7

Fed. R. Evid. 901..............................................6, 7

**TRIAL MEMORANDUM**

**I.    FACTUAL SUMMARY OF THE GOVERNMENT'S CASE**

Defendant Casey Mahoney is charged in the superseding indictment with conspiring to pay and receive illegal kickbacks to "patient brokers," in exchange for referrals of patients for addiction treatment at defendant's facilities, Get Real Recovery ("Get Real") and Healing Path Detox ("Healing Path"), in violation of the Eliminating Kickbacks in Recovery Act ("EKRA").  The superseding indictment also charges defendant with substantive counts of paying illegal kickbacks in violation of EKRA, laundering the proceeds of the conspiracy and aiding and assisting in the filing of a false tax document.

The government anticipates that the trial evidence will show that Mahoney paid tens of thousands of dollars per month in illegal kickbacks to his co-conspirators, who were "patient brokers," in exchange for patient referrals to Healing Path and Get Real.  Mahoney concealed the illegal kickbacks by entering into contracts with the co-conspirator patient brokers to feign the appearance that the payments were a flat fee payment for marketing or similar services, as well as by paying the patient brokers through shell entities set up for the brokers' benefit.  In reality, Mahoney and the patient brokers had a verbal agreement whereby Mahoney calculated respective kickback amounts owed to the patient brokers for each patient referred to Healing Path and Get Real, based on the patient's type of insurance, the type of treatment the facilities billed to the patient's insurance, and the length of the patient's stay at Healing Path and Get Real.

As a part of the conspiracy, the patient brokers would pay a

portion of the illegal kickbacks paid by Mahoney to the recruited

patients, often in the form of cash, in exchange for staying at

Healing Path and Get Real.

Mahoney is also charged with money laundering and aiding and

assisting the filing of a false tax document.  These charges relate

to specific kickback payments Mahoney made to one of his patient

brokers through that broker's mother, and Mahoney's creation of a

false tax return to make it look like the broker's mother worked for

Mahoney when she did not.  Defendant is presumed innocent and has

pleaded not guilty to the charges.

## II.  THE INDICTMENT AND ELEMENTS

Mahoney is charged with one count of conspiracy to pay and

receive EKRA kickbacks, in violation of 18 U.S.C. § 371, seven count

of offering and paying EKRA kickbacks, in violation of 18 U.S.C.

§§ 220(a)(2) and 2, three counts of concealment money laundering, in

violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2, and one count of

aiding and assisting in the filing of a false tax document, in

violation of 26 U.S.C. §§ 7206(2) and 2.

### A.   Conspiracy to Violate EKRA

The elements of the offense charged in Count One, that is

conspiracy to solicit, receive, pay, and offer illegal remunerations

for referrals to clinical treatment facilities, in violation of 18

U.S.C. § 371, are as follows: (1) beginning on a date unknown, but no

later than on or about October 24, 2018, and ending on or about

December 15, 2020, there was an agreement between two or more persons

to commit at least one crime as charged in the indictment, that is to

pay illegal remunerations for referrals to clinical treatment

facilities; (2) the defendant became a member of the conspiracy

2

knowing of at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act on or after October 24, 2018, for the purpose of carrying out the conspiracy.

See Ninth Circuit Model Criminal Jury Instructions, No. 11.1 (2022 ed.)

**B.    Offering or Paying Illegal Remunerations**

The elements of the offense charged in Counts Two through Eight of the indictment, that is with offering or paying illegal remunerations for referrals to a recovery home or clinical treatment facility, in violation of 18 U.S.C. §§ 220(a)(2) and 2, are as follows: (1) the defendant knowingly and willfully offered or paid illegal remuneration, specifically a kickback, to a patient; (2) at least one purpose of the offer or payment to the patient was to induce a referral of that individual to a clinical treatment facility; (3) the services to be provided to the individual by the clinical treatment facility were covered by a health care benefit program; and (4) the health care benefit program was in or affected interstate or foreign commerce.

The Ninth Circuit does not have a pattern instruction for the offense of offering and payment of kickbacks in the addiction treatment industry, in violation of 18 U.S.C. § 220(a)(2).  The elements of the above instruction are based upon the language of the statute, and on jury instructions for the federal Anti-Kickback Statute (42 U.S.C. § 1320a-7b) as detailed in Ninth Circuit Model Criminal Jury Instruction, No. 24.26 (2022 ed.) [Soliciting or Receiving Kickbacks in Connection with Medicare or Federal Health Care Program Payments (42 U.S.C. § 1320a-7b(b)(1)(A))].

3

**C.   Concealment Money Laundering**

The elements of the offense charged in Counts Eleven-Thirteen, that is money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2, are as follows: (1) the defendant conducted a financial transaction involving property that represented the proceeds of Conspiracy to Pay, Offer, Solicit, and Receive Illegal Remunerations for Referrals to Clinical Treatment Facilities; (2) the defendant knew that the property represented the proceeds of some form of unlawful activity; and (3) the defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, and control of the proceeds.

A financial transaction is a transaction involving the movement of funds by wire or other means that affects interstate or foreign commerce in any way.

See Ninth Circuit Model Criminal Jury Instructions, No. 18.4 (2022 ed.)

**D.   Aiding and Assisting the Preparation of a False Tax Document**

The elements of the offense charged in Count Twenty-Seven of the indictment, that is aiding and assisting in the preparation of a false tax document, in violation of 26 U.S.C. §§ 7206(2) and 2, are as follows: (1) the defendant aided, assisted, advised, procured, and counseled another person in the preparation or presentation of an Internal Revenue Service Form 1099 that was false and fraudulent; (2) the Form 1099 was false and fraudulent as to any material matter necessary to a determination of whether income tax was owed; and (3) the defendant acted willfully.

The government is not required to prove that the taxpayer knew

4

that the Form 1099 was false.

See Ninth Circuit Model Criminal Jury Instructions, No. 22.4 (2022 ed.).

**III. TRIAL**

    **A.    Length of Trial**

The government expects that its case-in-chief will take four to five days, including cross-examination.

    **B.    Witnesses**

The government presently intends to call the following witnesses in its case-in-chief:[1]

        1.    Dorian Ballough

        2.    Vincent Munoz

        3.    Kathleen Kennedy

        4.    Chris Pryor

        5.    SIU Investigator Ashlee Rocchi

        6.    SIU Investigator David Schneider

        7.    Daryl Ballough

        8.    Winnie Cruz

        9.    Courtney Shea

        10.    Darius Moore

        11.    James Stathatos

        12.    Robert Moody

        13.    Darrell Twedt

---

[1] The government reserves the right to amend this witness list up until the date set by the Court's Criminal Standing Order and to the extent necessary to rebut evidence introduced by defendant.

## IV.   LEGAL AND EVIDENTIARY ISSUES

The government anticipates the following legal and evidentiary issues may arise during trial.

### A.    Admissibility of Audio Recording

The government intends to introduce a recording from defendant's employee's phone which featured one of defendant's co-conspirators, Darius Moore, negotiating kickbacks with a patient.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

In the case of the recording, the government anticipates offering testimony and evidence that the recording features Moore's voice, that defendant Mahoney received the recording in June 2020, and that Mahoney continued doing business with Moore, despite receiving information Moore was paying patients kickbacks.  First, the government anticipates authenticating the recording through Moore, who would be able to confirm it features his voice, and further establish that he discussed the recording with Mahoney in July 2020, shortly after the recording was sent.

Alternatively, even if Moore doesn't testify, the government can establish the same general facts through law enforcement witnesses. Rule 901(a) "allows the district court to admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." Vatyan v. Mukasey, 508 F.3d 1179, 1184 (9th Cir. 2007).  "Once the offering party meets this burden, 'the probative value of the evidence is a matter for the jury.'" United States v. Ortiz, 776 F.3d 1042, 1045 (9th Cir. 2015)

1  (quoting United States v. Workinger, 90 F.3d 1409, 1415 (9th Cir.
2  1996)).

3  **B.    Admissibility of Undercover Video Recording**

4  The government also intends to introduce portions of a video
5  recording made by a government informant of Mahoney meeting with
6  fellow co-conspirators in which they discuss the conspiracy, steps to
7  avoid law enforcement detection, and discuss kickbacks owed to
8  patient brokers.  This recording is the basis for Overt Acts 6-9 in
9  Count One of the superseding indictment.

10  A recording is admissible upon a showing that it is "accurate,
11  authentic, and generally trustworthy."  United States v. King, 587
12  F.2d 956, 961 (9th Cir. 1978).  For example, testimony that a
13  recording depicts evidence that the witness observed is sufficient to
14  authenticate the recording.  Fed. R. Evid. 901(b); United States v.
15  Smith, 591 F.3d 974, 979-80 (8th Cir. 2010).

16  The recording will be authenticated by Dorian Ballough, who made
17  the recording at the direction of law enforcement.  The recording
18  features statements made by the defendant, three of his employees,
19  and three patient brokers.  Two of the patient brokers, including Mr.
20  Ballough, were acting as law enforcement informants when the
21  recording was made.

22  Statements made by the defendant or made by his co-conspirators
23  during and in furtherance of the conspiracy are non-hearsay under
24  Fed. R. Evid. 801(d)(2)(A) and (E), respectively.  This includes the
25  statements of defendant Mahoney, along with all of his employees who
26  were, as made clear by the recording itself, knowingly participating,
27  assisting, and administering the conspiracy and scheme to pay
28  kickbacks in exchange for patient referrals.  Similarly, Mr. Moore,

7

1  who was a body broker that was not cooperating with law enforcement

2  at the time of the recording, was also a co-conspirator.  That leaves

3  the statements of Mr. Ballough and the other informant-broker, Mr.

4  Kyle Reed.  These statements, which are scattered throughout the

5  recording, are not being offered for the truth of the matter

6  asserted, but rather as context.  See United States v. Barragan, 871

7  F.3d 689, 704-705 (9th Cir. 2017) ("[T]he informant's statements on

8  the tapes were not hearsay because, as the court instructed the jury,

9  they were offered only for context, not for "the truth of the matter

10 asserted."); United States v. Valerio, 441 F.3d 837, 844 (9th Cir.

11 2006) (finding district court did not abuse discretion in admitting

12 recorded conversation between informant and defendant and instructing

13 jury not to consider informant's statements for their truth).  The

14 statements are otherwise properly admitted to show the effect on the

15 listener, defendant Mahoney.  See United States v. Payne, 944 F.2d

16 1458, 1472 (9th Cir. 1991) (question posed to alleged molestation

17 victim was non-hearsay as it was introduced to show the effect on the

18 listener, the victim witness, and to explain the circumstances under

19 which the victim witness previously denied being molested).

20     **C.   Admissibility of Emails from Brent Littel**

21     The government intends to introduce an email from defendant

22 Mahoney's employee Brent Littel, who worked as the Clinical Director

23 for Healing Path Detox, as a statement of a co-conspirator.  This

24 email, and other evidence, including the aforementioned video

25 recording which Mr. Littel participated in, show that Mr. Littel

26 knowingly participated in the conspiracy and scheme to pay kickbacks

27 in exchange for patient referrals.  See Fed. R. Evid. 801(d).

28

8

### D.   Summary Charts

This case involves a large number of documents, including voluminous bank records, patient files, and claims data from private insurance companies.  To assist the jury's understanding of the case, the government intends to present various charts and summaries that will aid the jury in understanding the evidence, including exhibits that show checks paid from defendant's companies' bank accounts to defendant's co-conspirators, including through accounts for shell companies set up for the benefit of defendant's co-conspirators. The government is in the process of finalizing these charts and will provide draft and final versions to defendant Mahoney prior to trial.

Fed. R. Evid. 1006 provides that:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying or both, by other parties at a reasonable time and place.  And the court may order the proponent to produce them in court.

The Advisory Committee Notes to Rule 1006 add that: "The admission of summaries of voluminous books, records, or documents offers the only practicable means of making their contents available to judge and jury.  The rule recognized this practice, with appropriate safeguards."

A summary chart may be admitted as substantive evidence when the proponent establishes that the underlying documents upon which the summary is based are voluminous, admissible, and available for inspection.  United States v. Rizk, 660 F.3d 1125, 1130 (9th Cir. 2011).  "The purpose of the rule is to allow the use of summaries when the documents are unmanageable or when the summaries would be useful to the judge and jury."  Id. (quoting Davis & Cox v. Summa

Corp., 751 F.2d 1507, 1516 (9th Cir. 1985)).  Although the materials underlying the summary must be admissible, they need not themselves be admitted into evidence.  Rizk, 660 F.3d at 1125, 1130—31; see also United States v. Scales, 594 F.2d 558, 563 (6th Cir. 1979) (affirming introduction of summary charts presenting an organization of undisputed objective evidence in terms of relevant counts of the indictment).  Any contention that the chart may contain inaccuracies or omissions goes to the weight of the evidence, not its admissibility.  Rizk, 660 F.3d at 1131 n.2.

A summary witness may properly testify about, and use a chart to summarize, evidence that has already been admitted. The court and jury are entitled to have a witness "organize and evaluate evidence which is factually complex and fragmentally revealed." United States v. Shirley, 884 F.2d 1130, 1133-34 (9th Cir. 1989) (agent's testimony regarding her review of various telephone records, rental receipts, and other previously offered testimony held to be proper summary evidence, as it helped jury organize and evaluate evidence; summary charts properly admitted).

In addition, summary charts are admissible under Fed. R. Evid. 611(a), which permits a court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for ascertainment of the truth; (2) avoid needless consumption of time; and (3) protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a); United States v. Anekwu, 695 F.3d 967, 982 (9th Cir. 2012); United States v. Poschwatta, 829 F.2d 1477, 1481 (9th Cir. 1987); United States v. Gardner, 611 F.2d 770, 776 (9th Cir. 1980).

**E.   Proper Use of Interview Reports or Rough Notes at Trial.**

The Court should preclude defense counsel from using interview summary reports prepared by government agents to cross examine witnesses that were the subjects of these memoranda because those reports are not "statements" made by those witnesses, unless the witness reviewed and adopted the summary report.  A statement within the meaning of the Jencks Act is defined as (1) "a written statement made by said witness and signed or otherwise adopted and approved by him," (2) a recording or transcription that "is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously," or (3) a statement made by a witness to the grand jury.  18 U.S.C. § 3500(e)(1)-(3).  Interview summary reports do not constitute "a substantially verbatim recital" of the witness's statements under the Jencks Act because they reflect the thought processes and interpretations of the agent, and the full reports are written after interviews are completed.  See United States v. Claiborne, 765 F.2d 784, 801 (9th Cir. 1985) ("[B]ecause the summaries represent . . . the agents' selection of certain information . . . the district court properly characterized the summaries as non-Jencks Act material."), abrogated on other grounds by Ross v. Oklahoma, 487 U.S. 81 (1988).  The Ninth Circuit has held, generally, that "a third party's characterization of a witness's statement is not attributable to the witness for impeachment purposes."  United States v. Tones, 759 F. App'x 579, 585 (9th Cir. 2018).  See also Palermo v. United States, 360 U.S. 343, 352 (1959) (holding "only those statements which could properly be called the witness' own words [to] be made available to the defense" under the Jencks Act).

11

While subsection (e)(1) does apply to statements adopted or approved by the witness, here, the witness has neither adopted nor approved statements, therefore, the adoption requirement "clearly is not met [because] [] the [writer] [did] not read back, or the witness [did] not read, what the [writer] has written." Goldberg v. United States, 425 U.S. 94, 110 n.19 (1976).

In sum, although the government has produced relevant interview reports in this case, there are no interview reports that have been adopted or approved by the witness such that they can be considered statements of the witness. Rather, they are statements of government agents summarizing the substance of a witness interview. It would be improper to cross-examine a witness on the summary created by another individual, and defense counsel should be precluded from doing so.

While the defense is free to ask a witness whether he or she made a statement that is reflected in an interview report, the defense may not publish or introduce the contents of the report as a prior inconsistent statement if the defense is not satisfied with the witness' answer. United States v. Harris, No. CR 17-00001 HG-01, 2018 WL 1990520, at *1 (D. Haw. Apr. 25, 2018) (citing United States v. Kot, No. 2:10-CR-00280-KJD, 2012 WL 1657118, at *2 (D. Nev. May 10, 2012), aff'd, 583 F. App'x 716 (9th Cir. 2014) (citing United States v. Brika, 416 F.3d 514, 529 (6th Cir. 2005) ("Such documents [FBI 302s] have been deemed inadmissable for impeaching witnesses on cross-examination because they represent the "'investigator's selections, interpretations and interpolations.'"), abrogated on other grounds by United States v. Booker, 543 U.S. 222 (2005)); United States v. Leonardi, 623 F.2d 746, 757 (2d Cir. 1980) (holding that because "the written statement of the FBI agent was not

attributable to [the witness]" it was "properly rejected as a prior inconsistent statement"); United States v. Hill, 526 F.2d 1019, 1026 (10th Cir. 1975) (upholding the trial court's decision to "not allow counsel to use the 302 statement to impeach a witness because the witness did not prepare or sign the document and probably never adopted it").

Further, the defense may not use the interview report in a way that suggests to the jury the interview report is a statement of the witness.  Kot, 2012 WL 1657118, at *2 (citing United States v. Marks, 816 F.2d 1207, 1210-11 (7th Cir. 1987) (holding that where defense counsel read from a 302 during cross-examination in a way that would "seem authoritative" and potentially confuse the jury, the judge was entitled to require the witness be shown the 302 and given the opportunity to adopt or reject it as a statement, although such a practice was no longer required by the Federal Rules of Evidence)).

F.   **Evidence of Any Legitimate Substance Abuse Treatment Services Provided or other Good Conduct as a Defense to the Charges in the Superseding Indictment.**

The defendant should be precluded from offering evidence of any legitimate addiction treatment services, legitimate medical billing or other good conduct as a defense to the charges in the superseding indictment.  The Ninth Circuit has consistently held that "a defendant cannot establish his innocence of crime by showing that he did not commit similar crimes on other occasions." Herzog v. United States, 226 F.2d 561, 565 (9th Cir. 1955); see also United States v. Lara, 2018 WL 1225204 at *1 (E.D. Calif. 2018) (defendant charged with filing fraudulent tax returns not allowed to introduce evidence of other, non-fraudulent tax returns to establish innocence of

charged conduct.); <u>United States v. Dimora</u>, 750 F.3d 619, 630 (6th
Cir. 2014) ("For the same reason that prior 'bad acts' may not be
used to show predisposition to commit crimes, prior 'good acts'
generally may not be used to show a predisposition not to commit
crimes."); <u>United States v. Ellisor</u>, 522 F.3d 1255, 1270 (11th Cir.
2008) (affirming district court's ruling precluding the defendant
from offering evidence of his legitimate business activities because
"evidence of good conduct is not admissible to negate fraudulent
intent"); <u>United States v. Marrero</u>, 904 F.2d 215 (5th Cir. 1990)
(excluding defendant psychologist from offering evidence of
legitimate billings in false claims act case because it was
irrelevant that the defendant "did not overcharge in every instance
in which she had the opportunity to do so"); <u>United States v. Scarpa</u>,
897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to
establish his innocence . . . through proof of the absence of
criminal acts on specific occasions."); <u>United States v. Winograd</u>,
656 F.2d 279 (7th Cir. 1981) (finding defendant's performance of some
legal trades irrelevant to his knowledge of illegal trades)

     First, any evidence of "legitimate" medical services is not at
all probative of the conduct charged in this case, which involved
conspiracy to pay and receive illegal kickbacks for patient referrals
and related money laundering and tax charges.  This is not a health
care fraud case, and even if it was, defendant cannot establish his
innocence by showing prior "good acts."  Indeed, defendant could have
provided legitimate addiction treatment services at his facilities
and still be found guilty of the charges in this case.  As such, the
Defendant should not be permitted to introduce anecdotal evidence or
witness testimony demonstrating that defendant legitimately billed

insurance companies or provided legitimate substance abuse treatment services, because this evidence is irrelevant as it does not tend to disprove the defendant's participation in the charged conspiracy to pay and receive kickbacks for patient referrals to his facilities, and thus inadmissible.

Second, even if the evidence has some hypothetical probative value, it should nonetheless be excluded under Federal Rule of Evidence 404 because it constitutes inadmissible character evidence. Evidence of "good acts" or legitimate business activity, when offered by the defendant, is improper character evidence. See Fed. R. Evid. 404 ("Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith."). While a defendant can offer evidence of his character for general law-abidingness under Rule 404(a)(1), a defendant cannot offer evidence that he lacks the propensity to engage in the type of crime charged. See United States v. Diaz, 961 F.2d 1417, 1419 (9th Cir. 1992) (where defendant could not provide testimony concerning his propensity to engage in drug dealing because this testimony went to the drug charge and not general law-abidingness). In this case, evidence of the defendant's "good acts" or legitimate services provided to substance abuse treatment patients does not relate to a pertinent character trait and does not establish that the defendant generally has a law-abiding character. Instead, such evidence would only be introduced by the defendant to demonstrate he did not pay for patient referrals in this case, and so is inadmissible under Rule 404(a)(1). Diaz, 961 F.2d at 1419-20.

Prior legitimate acts are routinely excluded. See United States v. Moreira, 605 Fed. App'x 852, 855 (11th Cir. 2015). In Moreira,

the defendants were accused of billing for home health services never

rendered and paying kickbacks for referrals.  Id.  The trial court

excluded evidence that some patients received services and got no

kickbacks.  Id.  Upholding exclusion, the Eleventh Circuit observed

that "[t]he Government did not charge and did not argue that there

was no legitimate business conducted at Anna Nursing.  Thus, evidence

that some of the claims filed by Anna Nursing may have been for

services legitimately provided to eligible patients without the

payment of kickbacks was irrelevant."  Id. at 859.

Moreover, isolated evidence of "non-criminal conduct" with

respect to claims to private insurance of "legitimate" treatment

services, even if marginally probative, should be excluded under Rule

403 because it is likely to be confusing to the jury.  Such

collateral evidence would confuse the issues in the case, which are

properly defendant's kickbacks for patient referrals and related

charges.

### G.   Jury Nullification

The defendant should be precluded from arguing or seeking to

admit evidence for the purpose of encouraging the jury to nullify its

verdict.  Jury nullification is "a violation of a juror's oath to

apply the law as instructed by the court."  United States v. Lynch,

903 F.3d 1061, 1079 (9th Cir. 2018) (quoting United States v. Thomas,

116 F.3d 606, 614 (2d Cir. 1997)).  The Ninth Circuit also made clear

that "no juror has the right to engage in nullification" and courts

have a "duty to forestall or prevent such conduct."  Merced v.

McGrath, 426 F.3d 1076, 1079–80 (9th Cir. 2005) (quoting United

States v. Thomas, 116 F.3d 606, 617 (2d Cir. 1997).  Moreover, a

"defendant has no right to a [nullifying] instruction informing the

jury of that power, and the court has no duty to give one."  Huitron v. Finn, 2003 WL 22159060, at *2 (N.D. Cal. Sept. 15, 2003); see also United States v. Powell, 955 F.2d 1206, 1213 (9th Cir. 1991) (upholding the refusal of defendant's request for an instruction on nullification because "our circuit's precedent indicates that the [defendant is] not entitled to jury nullification instructions") (citing United States v. Simpson, 460 F.2d 515, 519 (9th Cir. 1972)).

Because "trial courts have the duty to forestall or prevent such conduct," Merced, 426 F.3d at 1080, the government moves to exclude evidence and to preclude argument designed to convince the jury to acquit not because the government failed to prove the charged crimes, but rather because a guilty verdict would be contrary to one's sense of justice, morality, or fairness.  Since they do not make any fact in issue more or less probable, evidence and arguments meant to play on the jury's sympathy are not relevant under Federal Rule of Evidence 401 and must be excluded on that basis. In addition, appeals to sympathy are unduly prejudicial and confusing to the jury and misleading under Rule 403 and, therefore, properly excluded on that basis even if they had some arguable relevance.